No. 24-1780

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

_____

DARRIN BASS,
*Plaintiff-Appellant*,

v.

UNKNOWN KEEBAUGH AND DALE BONN,
*Defendants-Appellees.*

_____

On Appeal from the United States District Court
for the Western District of Michigan, No. 1:24-cv-00744
United States Magistrate Judge Phillip J. Green

_____

**PLAINTIFF-APPELLANT'S OPENING BRIEF**

_____

Devi M. Rao
Wynne Muscatine Graham
RODERICK & SOLANGE
  MACARTHUR JUSTICE CENTER
501 H Street NE, Suite 275
Washington, DC 20002
(202) 869-3434

Joshua D. Weiss*
UCLA SCHOOL OF LAW
PRISONERS' RIGHTS CLINIC
385 Charles E. Young Drive E
Los Angeles, CA 90095
(310) 206-7466
weiss@law.ucla.edu

*Counsel for Plaintiff-Appellant*

*This brief was prepared with the assistance of UCLA School of Law Prisoners' Rights Clinic students Mike Apsan-Orgera, Binwant Kaur Kahlon, Mark Pampanin, and Shannon Saul.

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Plaintiff-Appellant Darrin Bass requests oral argument to the extent responsive briefing from Appellees and oral argument would facilitate the issuance of a published opinion in this case. Appellant respectfully invites the Court to consider issuing a published opinion since courts in this Circuit have repeatedly failed to apply this Court's precedents when dismissing *pro se* litigants' suits regarding prison sleeping conditions. *See infra* pp. 38-40.

## DISCLOSURE PURSUANT TO SIXTH CIRCUIT RULE 26.1

Plaintiff-Appellant Darrin Bass makes the following disclosure:

Is said party a subsidiary or affiliate of a publicly owned corporation? **No.**

Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? **No.**

Dated: May 5, 2025                    /s/ *Joshua D. Weiss*
                                          Joshua D. Weiss

ii

# Table of Contents

**Page**

STATEMENT OF JURISDICTION...........................................................1

INTRODUCTION ...................................................................................2

QUESTIONS PRESENTED ...................................................................4

STATEMENT OF THE CASE ................................................................5

    I.     Factual Background..............................................................5

         A.    Defendants forced Mr. Bass to sleep on a concrete slab with protruding metal screws for a month based on a dismissed misconduct allegation .................5

         B.    Even if the misconduct ticket had not been dismissed, MDOC policy did not permit the removal of Mr. Bass's mattress based on the alleged misconduct...........................................8

    II.    Procedural History...............................................................9

SUMMARY OF ARGUMENT..............................................................12

STANDARDS OF REVIEW .................................................................16

ARGUMENT.........................................................................................18

    I.     This Court should reverse the dismissal of Mr. Bass's Eighth Amendment claim.....................................................18

         A.    Mr. Bass has adequately pleaded the objective prong of an Eighth Amendment violation ..................18

             i.    Under *Brown v. Bargery*, Defendants violated Mr. Bass's Eighth Amendment rights by subjecting him to an unsafe sleeping environment .........................................20

ii.  Defendants further violated Mr. Bass's Eighth Amendment rights by denying him a basic necessity of life: sleep ................................ 23

iii.  Defendants also subjected Mr. Bass to unnecessary and wanton pain for no penological purpose ............................................. 29

B.  Mr. Bass's pleadings satisfy the subjective prong of an Eighth Amendment violation ............................. 33

C.  The district court misapprehended the facts and ignored binding precedent ............................................. 38

II.  At minimum, the district court abused its discretion in dismissing Mr. Bass's Eighth Amendment claim with prejudice, and without first giving him an opportunity to amend .............................................................................. 40

A.  The district court failed to apply the liberal standard for granting leave to amend a *pro se* complaint ..................................................................... 41

B.  If granted leave to amend his complaint, Mr. Bass could supplement his complaint with facts leaving no doubt that he has a plausible Eighth Amendment claim ......................................................... 44

III.  The district court further abused its discretion by dismissing Mr. Bass's First Amendment claim with prejudice and without leave to amend ................................. 47

CONCLUSION ................................................................................... 54

# Table of Authorities

**Cases**                                                           **Page(s)**

*Antonelli v. Sheahan,*
  81 F.3d 1422 (7th Cir. 1996)................................................................ 24

*Bassett v. Nat'l Collegiate Athletic Ass'n,*
  528 F.3d 426 (6th Cir. 2008)................................................................ 17

*Begala v. PNC Bank, Ohio, Nat. Ass'n,*
  214 F.3d 776 (6th Cir. 2000)................................................................ 43

*Bell v. Johnson,*
  308 F.3d 594 (6th Cir. 2002).......................................................... 47, 49

*Berkshire v. Dahl,*
  928 F.3d 520 (6th Cir. 2019).......................................................... 26, 37

*Berndt v. State of Tenn.,*
  796 F.2d 879 (6th Cir. 1986)................................................................ 44

*Brandon v. Bergh,*
  No. 2:09- CV-179, 2009 WL 4646954
  (W.D. Mich. Dec. 8, 2009) .................................................................. 40

*Braswell v. Corr. Corp. of Am.,*
  419 F. App'x 622 (6th Cir. 2011) ........................................................ 12

*Brown v. Bargery,*
  207 F.3d 863 (6th Cir. 2000)........................................................*passim*

*Brown v. Matauszak,*
  415 F. App'x 608 (6th Cir. 2011) ........................................................ 44

*Bushway v. Bureau of Prisons,*
  198 F.3d 244 (6th Cir. 1999)................................................................ 51

*Chappell v. Mandeville,*
  706 F.3d 1052 (9th Cir. 2013)............................................................. 25

v

*Cook v. Leitheim,*
No. 1:22-CV-630, 2022 WL 3040342
(W.D. Mich. Aug. 2, 2022) ................................................................ 40

*Cunningham v. Jones,*
567 F.2d 653 (6th Cir. 1977) ................................................. 25, 26, 29

*Dellis v. Corr. Corp. of Am.,*
257 F.3d 508 (6th Cir. 2001) ................................................. 25, 26, 37

*Ernst v. Rising,*
427 F.3d 351 (6th Cir. 2005) ............................................................. 17

*Estelle v. Gamble,*
429 U.S. 97 (1976) ............................................................................. 30

*Farmer v. Brennan,*
511 U.S. 825 (1994) ................................................................. *passim*

*Flanory v. Bonn,*
604 F.3d 249 (6th Cir. 2010) ............................................................. 17

*Garrett v. Lumpkin,*
96 F.4th 896 (5th Cir. 2024) ............................................................. 24

*Grinter v. Knight,*
532 F.3d 567 (6th Cir. 2008) ............................................................... 8

*Harper v. Showers,*
174 F.3d 716 (5th Cir. 1999) ....................................................... 23, 24

*Helling v. McKinney,*
509 U.S. 25 (1993) ....................................................................... 18, 22

*Hill v. Lappin,*
630 F.3d 468 (6th. Cir. 2010) ........................................... 48, 49, 51, 52

*Hope v. Pelzer,*
536 U.S. 730 (2002) ..................................................................... 29, 31

*Janikowski v. Bendix Corp.,*
823 F.2d 945 (6th Cir. 1987) ....................................................... 41, 53

*Jones v. Carberry,*
    No. 2:08-CV-268, 2010 WL 1172562
    (W.D. Mich. Mar. 24, 2010) ........................................................ 40

*Jones v. Toombs,*
    77 F.3d 482 (6th Cir. 1996) ......................................................... 39

*Keenan v. Hall,*
    83 F.3d 1083 (9th Cir. 1996) ....................................................... 25

*King v. Zamiara,*
    788 F.3d 207 (6th Cir. 2015) ................................................. 12, 51

*Knop v. Johnson,*
    977 F.2d 996 (6th Cir. 1992) ....................................................... 30

*LaFountain v. Harry,*
    716 F.3d 944 (6th Cir. 2013) ....................................................... 42

*Lee v. Wagner,*
    No. 1:17-CV-474, 2017 WL 2608752
    (W.D. Mich. June 16, 2017) ........................................................ 39

*Lucas v. Chalk,*
    785 F. App'x 288 (6th Cir. 2019) ........................................... 42, 44

*Maben v. Thelen,*
    887 F.3d 252 (6th Cir. 2018) ....................................................... 48

*Mammana v. Fed. Bureau of Prisons,*
    934 F.3d 368 (3d Cir. 2019) .................................................. 24, 28

*Newberry v. Silverman,*
    789 F.3d 636 (6th Cir. 2015) ................................................. 17, 41

*O'Brien v. Michigan Dep't of Corr.,*
    592 F. App'x 338 (6th Cir. 2014) ............................................... 51

*Parchman v. SLM Corp.,*
    896 F.3d 728 (6th Cir. 2018) ................................................. 42, 44

*Rashada v. Flegel*,
  No. 23-1674, 2024 WL 1367436 (6th Cir. Apr. 1, 2024) .............. 43, 44

*Rhodes v. Chapman*,
  452 U.S. 337 (1981) ....................................................... 19, 29, 31

*Richmond v. Settles*,
  450 F. App'x 448 (6th Cir. 2011) ........................................ 39

*Sanders v. Smith*,
  No. 1:11-CV-892, 2011 WL 5921426
  (W.D. Mich. Nov. 27, 2011)............................................... 39

*Small v. Brock*,
  963 F.3d 539 (6th Cir. 2020)............................................. 12

*Spencer v. Bouchard*,
  449 F.3d 721 (6th Cir. 2006)............................... 19, 26, 37

*Stewart v. IHT Ins. Agency Grp., LLC*,
  990 F.3d 455 (6th Cir. 2021)............................................. 41

*Taylor v. Larson*,
  505 F. App'x 475 (6th Cir. 2012) ....................................... 22

*Thaddeus-X v. Blatter*,
  175 F.3d 378 (6th Cir. 1999)............................................. 49

*Thomas v. Eby*,
  481 F.3d 434 (6th Cir. 2007)......................................... 5, 17

*Tolliver v. Noble*,
  752 F. App'x 254 (6th Cir. 2018) ....................................... 43

*Walker v. Schult*,
  717 F.3d 119 (2d Cir. 2013) ......................................... 24, 28

*Wash v. Gilless*,
  215 F.3d 1328 (6th Cir. 2000)........................................... 50

*Wershe v. Combs*,
  763 F.3d 500 (6th Cir. 2014)......................................... 16, 17

*Williams v. Curtin,*
  631 F.3d 380 (6th Cir. 2011) ................................................................ 17

*Zakora v. Chrisman,*
  44 F.4th 452 (6th Cir. 2022) ......................................................*passim*

**Statutes and Rules**

28 U.S.C. § 636 .......................................................................................... 1

28 U.S.C. § 1291 ........................................................................................ 1

28 U.S.C. § 1331 ........................................................................................ 1

28 U.S.C. § 1343 ........................................................................................ 1

28 U.S.C. § 1915 ...................................................................................... 10

28 U.S.C. § 1915A .................................................................................... 10

42 U.S.C. § 1983 ................................................................................... 1, 9

42 U.S.C. § 1997e................................................................................ 10, 11

Fed. R. App. P. 4 ....................................................................................... 1

Fed. R. Civ. P. 15 .................................................................................... 41

**Other Authorities**

Am. Bar Ass'n, Standards for Crim. Just., Treatment of
  Prisoners, Section 23-3.3(b) (2010) .................................................... 32

Am. Corr. Ass'n, 2016 Standards Supplement,
  4-ACRS-4B-04 ..................................................................................... 32

Boucicaut Master, *The Death of the Roman Consul Marcus
  Atilius Regulus* (1413-1415), Getty, L.A. .......................................... 30

*Brain Basics: Understanding Sleep*, US DHHS, NIH, Nat'l
  Inst. of Neurological Disorders & Stroke (Accessed May 5,
  2025) .................................................................................................... 27

ix

Francesco P Cappuccio, et al., *Sleep Duration and All-Cause Mortality: A Systematic Review and Meta-Analysis of Prospective Studie*s, 33 SLEEP 585 (2010) ............................................. 27

*Here's What Happens When You Don't Get Enough Sleep*, Cleveland Clinic (May 29, 2024) ........................................ 28

Itani, O., et al., *Short sleep duration and health outcomes: A systematic review, meta-analysis, and meta-regression*, 32 SLEEP MED. 246 (2017) ...................................................... 27

Marcus Harrington et al., *The effect of sleep deprivation on emotional memory consolidation in participants reporting depressive symptoms*, 152 NEUROBIOLOGY OF LEARNING & MEMORY 10 (2018)............................................................... 27

Matthew Walker, *Why We Sleep: Unlocking the Power of Sleep and Dreams* 164 (2017)............................................... 28

Michigan Dept. of Corr., MDOC POLICY 03.02.130 (2024)........................ 8

Michigan Dept. of Corr., MDOC POLICY 04.05.120 (2024)...............*passim*

Michigan Dept. of Corr., MDOC POLICY 03.04.100 (2024)...................... 50

Michigan Dept. of Corr., MDOC POLICY 04.07.110 (2024) ...................... 8

Siaw Cheok Liew & Thidar Aung, *Sleep Deprivation and Its Association with Diseases - A Review*, 77 SLEEP MED. 192 (2021) ............................................................................... 27

*Tetanus*, World Health Org. (July 12, 2024) ............................................ 21

United Nations Office on Drugs and Crime, United Nations Standard Minimum Rules for the Treatment of Prisoners (the Nelson Mandela Rules), G.A. Res. 70/175 (adopted Dec. 17, 2015) ..................................................................... 32

US DHHS, NIH, Nat'l Heart, Lung & Blood Inst., Your Guide to Healthy Sleep (2011) (NIH Publ'n No. 11-5271)................. 27

*Why Sleep Matters: Consequences of Sleep Deficiency*, Harv. Med. Sch. Div. of Sleep Med. (Oct. 1, 2021)........................................ 27

Yin, J. et al., *Relationship of sleep duration with all-cause mortality and cardiovascular events*, 117 J. AM. HEART ASS'N 1 (2017) ................................................................................. 27

## STATEMENT OF JURISDICTION

Plaintiff-Appellant Darrin Bass filed this action pursuant to 42 U.S.C. § 1983 in the United States District Court for the Western District of Michigan. Because he consented to proceed under the jurisdiction of a magistrate judge, United States Magistrate Judge Phillip J. Green had jurisdiction under 28 U.S.C. §§ 636(c), 1331, and 1343. (Complaint, ECF 1, PageID.5.) On August 8, 2024, the district court entered judgment dismissing Mr. Bass's complaint with prejudice. (Judgment, ECF 6, PageID.34.) Mr. Bass filed a timely notice of appeal on September 6, 2024. (Notice of Appeal, ECF 7, PageID.35); Fed. R. App. P. 4(a)(1)(A). This Court has appellate jurisdiction under 28 U.S.C. § 1291.

**INTRODUCTION**

Prison guards took away Darrin Bass's mattress, leaving him with nowhere to sleep except for a concrete slab riddled with metal screws. The screws protruded from the slab, so that they stuck into Mr. Bass's body when he tried to sleep. Making matters worse, because Mr. Bass was in solitary confinement, he was confined to his cell for more than twenty-three hours per day—with nowhere to rest or sleep except for the concrete bed of screws. Despite Mr. Bass's pleas for help and the prison's own policies prohibiting the mattress deprivation, the guards and the deputy warden refused to return the mattress for thirty days. These sleep-depriving and dangerous conditions caused Mr. Bass serious injuries. They also struck at the core of the Eighth Amendment's protections against cruel and unusual punishment.

Mr. Bass brought a *pro se* lawsuit against the deputy warden and the prison guard who inflicted these conditions on him. The district court then dismissed Mr. Bass's complaint with prejudice under the pre-service screening procedures of the Prison Litigation Reform Act ("PLRA"). The PLRA's screening procedures are designed to weed out frivolous lawsuits that would waste the courts' and parties' time if the defendants were

2

required to answer the allegations. This is not such a case. Given the severity of the allegations at issue and binding precedent establishing the merits of Mr. Bass's claim, this Court should reverse the dismissal.

At minimum, the Court should vacate the district court's with-prejudice dismissal and remand to give Mr. Bass an opportunity to amend his complaint. The district court dismissed the *pro se* complaint because, according to the court, the complaint did not provide enough details about the extent of Mr. Bass's injuries. But even if the complaint had been deficient in the amount of detail it provided—it was not—then such a deficiency could easily be cured in an amended complaint. It is perplexing, then, that the court did not provide Mr. Bass a single opportunity to amend his complaint, as is required by the civil rules and this Court's precedents. If given such an opportunity, Mr. Bass could specify the extent of his injuries, which were so severe that he still requires medical treatment to this day, more than a year later.

The Defendants forced Darrin Bass to sleep on something more akin to a medieval torture device than a bed. All he asks of this Court is to allow his claim to proceed past the PLRA's screening stage. This Court should grant him that modest relief.

3

## QUESTIONS PRESENTED

1. Whether Mr. Bass stated a sufficient Eighth Amendment claim to proceed past the PLRA's preliminary screening procedures where he alleged that Defendants removed his mattress and forced him to sleep on a concrete slab with protruding metal screws for thirty days, causing him physical and psychological injuries.

2. Whether, at minimum, the district court abused its discretion when it refused, without providing any justification, to grant Mr. Bass a single opportunity to amend his Eighth Amendment claim before dismissing his action with prejudice.

3. Whether the district court similarly abused its discretion when it dismissed Mr. Bass's First Amendment retaliation claim with prejudice, instead of providing him a single opportunity to amend the complaint and clarify that claim, which raises multiple acts of retaliation by Defendants after Mr. Bass filed grievances asking for the return of his mattress.

4

## STATEMENT OF THE CASE

### I.    Factual Background[1]

#### A.    Defendants forced Mr. Bass to sleep on a concrete slab with protruding metal screws for a month based on a dismissed misconduct allegation

Darrin Bass is a 40-year-old man with a hearing disability who was deprived of his mattress for a month while incarcerated at the Ionia Correctional Facility, in the custody of the Michigan Department of Corrections ("MDOC"). (Complaint, ECF 1, PageID.2-3.) Without his mattress, Mr. Bass was forced to sleep (or try to) on a concrete slab with protruding metal screws jabbing into his body. (*See id.* at PageID.3.) And because he was housed in solitary confinement, Mr. Bass had nothing but the concrete slab to lay or rest on for nearly twenty-four hours a day. (*Id.* at PageID.2-3); *see* MDOC POLICY 04.05.120, 6 ¶ 21.[2] As a result, he

---

[1] The factual background is based on Mr. Bass's complaint, the documents attached thereto, the district court's decision, and publicly available policy statements published by the Michigan Department of Corrections, which the court cited in its decision dismissing the complaint. Mr. Bass's factual allegations are taken as true. *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007).

[2] Available at https://www.michigan.gov/corrections/public-information/statistics-and-reports/policy-directives.

suffered a cavalcade of physical, mental, and psychological injuries. (Complaint, ECF 1, at PageID.5.)

There was no justification for these conditions: although Mr. Bass's mattress was initially taken due to a misconduct charge, that charge was quickly dismissed. On February 6, 2024, Defendant Correctional Officer Keebaugh issued Mr. Bass a class II misconduct ticket alleging "destruction/misuse of state property" and requested that Mr. Bass be placed on a mattress restriction. (Complaint, ECF 1, PageID.3; Misconduct and Hearing Reports, ECF 1-1, PageID.9-10.) Mr. Bass's administrative hearing was set for February 15, 2024; however, officers took away his mattress six days earlier, on February 9, 2024, before he could defend himself against the charge. (Complaint, ECF 1, PageID.3 (stating that the mattress removal began on February 9, 2024); Hearing Report, ECF 1-1, PageID.10.) Defendant Deputy Warden Dale Bonn also "signed off and approved" Mr. Bass's month-long mattress restriction before the February 15 hearing. (Grievance Form, ECF 1-1, PageID.14.)

At the hearing, the prison's hearing officer dismissed the misconduct charge. (Hearing Report, ECF 1-1, PageID.10.) But, despite the dismissal, Defendant Bonn continued to re-approve Mr. Bass's

mattress restriction every seven days for the entire month. (Complaint, ECF 1, PageID.3; Grievance Forms, ECF 1-1, PageID.11, 14; Opinion, ECF 5, PageID.29-30, n.2 (district court finding that "the restriction was imposed on the authority of [Warden] Bonn")); MDOC POLICY 04.05.120, 7–8 ¶¶ HH, JJ (mattress restriction can be approved only by the warden or deputy warden, and "shall be reviewed at least every seven calendar days, by the Warden or Deputy Warden and a determination made as to whether the restriction needs to be continued").

On February 15 and again on February 16, Mr. Bass spoke with prison officials to try to get his mattress back. (Grievance Forms, ECF 1-1, PageID.14 (explaining that Mr. Bass tried to resolve the issue on both February 15 and 16, 2024); *id.* at PageID.11 (explaining that Mr. Bass spoke with three prison officials on February 16, 2024).) None answered Mr. Bass's pleas. (Complaint, ECF 1, PageID.3-4.)

On February 19, 2024, after Mr. Bass's repeated attempts to get his mattress back went unanswered, he filed a formal grievance. (Grievance Forms, ECF 1-1, PageID.11, 14.) Mr. Bass then proceeded to exhaust the

7

grievance process.[3] (Complaint, ECF 1, PageID.4; Grievance Forms, ECF 1-1, PageID.11-15.) In the end, Mr. Bass was denied his mattress for the entire thirty days, despite no finding that he engaged in any misconduct. (Complaint, ECF 1, PageID.3.)

> **B.    Even if the misconduct ticket had not been dismissed, MDOC policy did not permit the removal of Mr. Bass's mattress based on the alleged misconduct**

MDOC policy requires that all prisoners be provided basic necessities, including a mattress.[4] Prison officials can withhold a prisoner's mattress only under limited conditions, specifically only for "serious reasons of health, safety, or security related to the item," and only "upon written approval from the Warden or Deputy Warden."

---

[3] Mr. Bass fully exhausted the prison's grievance process by describing the "who, what, when, where, why, how" along with the "[d]ates, times, places, and names of all those involved in the issue being grieved[.]" MDOC POLICY 03.02.130, 4 ¶ Y (2024); (Complaint, ECF 1, PageID.4; Grievance Forms, ECF 1-1, PageID.11-15.) In any event, since "[f]ailure to exhaust is an affirmative defense under the PLRA," incarcerated plaintiffs "are not required to specially plead or demonstrate exhaustion in their complaints.'" *Grinter v. Knight*, 532 F.3d 567, 577–78 (6th Cir. 2008) (quoting *Jones v. Bock*, 549 U.S. 199, 216 (2007)).

[4] *See* MDOC POLICY 04.07.110, 1 (guaranteeing "cell/room furnishings for . . . basic personal needs"); MDOC POLICY 04.05.120, 5 ¶ AA.10 (guaranteeing a mattress).

8

MDOC POLICY 04.05.120, 7 ¶¶ HH, JJ. Crucially, a mattress cannot be withheld from a prisoner "for the purpose of punishment." *Id.* Here, in contravention of these policies, the only justification ever provided for the mattress deprivation was to punish Mr. Bass: Defendant Keebaugh initiated the mattress deprivation as punishment for Mr. Bass's alleged misconduct, and Defendant Bonn provided no reason for his decision to continually authorize the deprivation. (Misconduct Report, ECF 1-1, PageID.9; *see also* Complaint, ECF 1, PageID.3 (Mr. Bass was "not in violation of any rule, and shouldn't be punished")).

## II.    Procedural History

Mr. Bass filed a *pro se* civil rights action under 42 U.S.C. § 1983 against Defendant Keebaugh and Defendant Bonn. (Complaint, ECF 1, PageID.1; Opinion, ECF 5, PageID.24.) In his complaint, Mr. Bass alleged that by forcing him to sleep on a concrete slab with protruding screws, Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. (Complaint, ECF 1, PageID.3-4.) He also alleged that Defendants retaliated against him, in violation of the First Amendment, when they continued to deprive him of a mattress after the misconduct charge was dismissed. (*Id.*) Mr. Bass alleged that

9

Defendants' conduct caused him "significant hardship, mental, physical, and psychological injury." (*Id.* at PageID.5.) As relief, he sought compensatory and punitive damages. (*Id.*)

The district court dismissed Mr. Bass's complaint with prejudice under the screening procedures of the PLRA, 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). (Opinion, ECF 5, PageID.24-26; Judgment, ECF 6, PageID.34.) That is, the court dismissed Mr. Bass's first complaint without providing him with an opportunity to amend it, and before Defendants were served or required to answer. (*Id.*)

In explaining its decision, the district court stated that Mr. Bass "does not allege that he suffered any particular discomfort or pain as a result of the mattress restriction." (Opinion, ECF 5, PageID.32.) In writing this, the court seemed to overlook the fact that Mr. Bass's complaint stated that Defendants' conduct caused "significant hardship, mental, physical, and psychological injury." (Complaint, ECF 1, PageID.5.) The district court nevertheless described Mr. Bass's monthlong mattress restriction as "part of the penalty that criminal offenders pay for their offenses against society," and concluded that Mr. Bass's "unpleasant . . . temporary placement on a mattress restriction

10

fails to state an Eighth Amendment claim." (Opinion, ECF 5, PageID.30 (citations omitted).) The district court also concluded that Mr. Bass failed to satisfy the subjective or objective prongs of an Eighth Amendment claim, though it did not conduct more than a cursory analysis of either component. (*Id.* at PageID.32.)

Finally, the district court also concluded that Mr. Bass failed to state a claim under the First Amendment because he did not allege that he engaged in protected conduct before Defendant Keebaugh wrote the misconduct ticket or Defendant Bonn approved the mattress restriction. (*Id.* at PageID.29.) The court did not address Mr. Bass's allegation that Defendants retaliated against him by *continuing* the mattress deprivation after the misconduct charge was dismissed, by which time Mr. Bass had submitted multiple oral and written grievances. (*See* Complaint, ECF 1, at PageID.3.)

The district court then dismissed Mr. Bass's complaint with prejudice.[5] (Judgment, ECF 6, PageID.34.) The court did not provide any

---

[5] The district court did not conduct an analysis of the PLRA's physical injury requirement. (Opinion, ECF 5, PageID.27-33); *See* 42 U.S.C. § 1997(e). Regardless, Mr. Bass alleged that sleeping on a concrete slab with protruding screws for thirty days caused him "significant

11

reason for its decision to dismiss the complaint with prejudice and without providing Mr. Bass an opportunity to file an amended complaint. (Opinion, ECF 5, PageID.33.) Still proceeding *pro se*, Mr. Bass timely filed a notice of appeal. (Notice of Appeal, ECF 7, PageID.35.) Undersigned counsel began representing Mr. Bass *pro bono* on appeal.

## SUMMARY OF ARGUMENT

I.     The Eighth Amendment bars prisons from inflicting the kinds of dangerous and barbaric punishments that America's founding generation sought to leave in antiquity. When Defendants locked Mr. Bass in solitary confinement with only a concrete slab pockmarked by metal screws to lay or sleep on, they crossed this forbidden threshold. This Court should reverse the dismissal of Mr. Bass's Eighth Amendment claim.

---

hardship," including "physical . . . injury." (Complaint, ECF 1, PageID.5.) These allegations are more than sufficient to satisfy the PLRA's physical injury requirement, particularly at this early stage of litigation. *See, e.g.*, *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 626-27 (6th Cir. 2011) (unpublished). And, at any rate, the PLRA's physical injury requirement does not apply to Mr. Bass's request for punitive damages or to his First Amendment claim. *Small v. Brock*, 963 F.3d 539, 543 (6th Cir. 2020); *King v. Zamiara*, 788 F.3d 207, 212 (6th Cir. 2015).

I.A. Mr. Bass's *pro se* complaint was sufficient to survive the preliminary screening procedures of the PLRA because it plausibly pleaded both the objective and subjective prongs of an Eighth Amendment claim. In fact, the complaint shows that Defendants' conduct objectively violated Mr. Bass's Eighth Amendment rights in three separate ways:

*First*, in forcing him to sleep on a concrete bed covered in metal screws, Defendants subjected Mr. Bass to an unsafe sleeping environment. Indeed, the conditions here were similar to, but more dangerous than, those at issue in *Brown v. Bargery*, 207 F.3d 863 (6th Cir. 2000), where this Court reversed a district court's dismissal and found that a dangerous sleeping environment violated the Eighth Amendment. This case is controlled by *Brown*, which requires the same result.

*Second*, Defendants subjected Mr. Bass to sleep-depriving conditions for thirty days. Five other circuit courts have concluded that because sleep is one of life's basic necessities, the Eighth Amendment forbids a prison from subjecting a prisoner to sleep-depriving conditions. This Court should join this unanimous chorus and reach the

13

commonsense conclusion that, just like food, water, and exercise, sleep is a basic necessity guaranteed by the Eighth Amendment.

*Third,* Defendants' treatment of Mr. Bass can only be described as a wanton and unnecessary infliction of pain, lacking any penological justification.

However the Eighth Amendment violation is framed, the analysis leads to the same result: Mr. Bass's complaint adequately alleged the objective prong of an Eighth Amendment claim.

I.B.   Mr. Bass's complaint also alleged sufficient facts to make out the subjective prong of an Eighth Amendment claim. In *Farmer*, the Supreme Court held that a factfinder may infer a defendant's knowledge from the fact that the risk of harm was obvious. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). Applying this rule, this Court held in *Brown* that the plaintiff adequately pleaded the subjective prong of the Eighth Amendment because he notified prison officials about the conditions of his cell, which sufficiently showed that the defendant-warden knew about those conditions and was deliberately indifferent to the obvious risks they posed. *Brown*, 207 F.3d at 867-68. The same applies here: when Defendants took repeated, affirmative steps to deprive Mr. Bass of

14

a safe sleeping environment, they knowingly subjected him to conditions posing an obvious risk of harm. Mr. Bass's complaint thus satisfies the subjective prong of the Eighth Amendment claim.

I.C.    In dismissing the complaint at this early stage of litigation, the district court ignored key facts alleged in the complaint—most crucially, that Mr. Bass sustained actual injuries as a result of Defendants' conduct. The district court also ignored controlling authorities from this Court, which establish the merits of Mr. Bass's Eighth Amendment claim. The court instead relied on a few unpublished decisions, which were all litigated *pro se* and consequently failed to address controlling authorities like *Brown*. This Court should reverse the district court's decision.

II.    At minimum, the Court should vacate the with-prejudice dismissal and remand so that Mr. Bass can amend his complaint. The district court dismissed Mr. Bass's complaint for failing to specify the extent of his injuries, but instead of granting him leave to amend his *pro se* complaint, as the law requires, the court dismissed his first complaint with prejudice. This was an abuse of discretion. Mr. Bass should be granted leave to amend his complaint to further specify the cruel and

15

unusual conditions he was subjected to, and the extent of the injuries he suffered as a result.

III.    The Court should also vacate the district court's dismissal of Mr. Bass's First Amendment claim and grant him leave to amend that claim. If granted leave to amend, Mr. Bass could show that Defendants' actions, lacking any penological justification, were instead acts of retaliation for the exercise of his First Amendment rights. More specifically, if granted leave to amend, Mr. Bass could allege facts showing that after the misconduct charge was dismissed and he filed grievances against Defendants, they continued to re-authorize his inhumane treatment and subsequently denied him medical care in retaliation for his decision to file grievances. As a *pro se* plaintiff, he should be granted leave to amend his complaint so that he can clarify his First Amendment claim.

## STANDARDS OF REVIEW

This Court reviews *de novo* a district court's decision to dismiss a lawsuit pursuant to the screening procedures of the PLRA. *Wershe v. Combs*, 763 F.3d 500, 505 (6th Cir. 2014). "In determining whether a prisoner has failed to state a claim, we construe his complaint in the light

16

most favorable to him, accept his factual allegations as true, and determine whether he can prove any set of facts that would entitle him to relief." *Id.* (citation omitted). This analysis "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Flanory v. Bonn*, 604 F.3d 249, 252 (6th Cir. 2010) (citation omitted). The Court "may not uphold" a dismissal "'simply because we find the plaintiff's allegations unlikely.'" *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (cleaned up). Additionally, the Court "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). And because *pro se* plaintiffs are held to less stringent standards than lawyers, their complaints must be "liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011).

This Court reviews for abuse of discretion a district court's "decision to dismiss a claim with prejudice or without it" and to deny leave to amend a complaint. *Ernst v. Rising*, 427 F.3d 351, 366 (6th Cir. 2005) (en banc); *see also Newberry v. Silverman*, 789 F.3d 636, 645 (6th Cir. 2015).

17

## ARGUMENT

### I.    This Court should reverse the dismissal of Mr. Bass's Eighth Amendment claim

Mr. Bass's complaint plausibly alleged that Defendants subjected him to unconstitutional conditions of confinement. To determine if a defendant's conduct amounts to an Eighth Amendment violation, courts apply the two-part test the Supreme Court developed in *Farmer*, which is comprised of objective and subjective elements. *See Farmer v. Brennan*, 511 U.S. 825, 827 (1994). Mr. Bass's complaint—alleging that the Defendants knowingly subjected him to dangerous, sleep depriving conditions—was more than sufficient to satisfy the *Farmer* test, especially at this early stage of litigation.

### A.    Mr. Bass has adequately pleaded the objective prong of an Eighth Amendment violation

The objective prong of the *Farmer* test can be demonstrated through a deprivation or risk of harm that is "sufficiently serious." *Farmer*, 511 U.S. at 825. A violation is sufficiently serious when "society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). This standard is interpreted in a "flexible and

18

dynamic" manner, reflecting that standards of decency evolve over time. *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). This Court has recognized that cognizable harms include the exposure to an excessive risk to health or safety, *Zakora v. Chrisman*, 44 F.4th 452, 469 (6th Cir. 2022), or the failure to "provide for [a person's] basic human needs," *Spencer v. Bouchard,* 449 F.3d 721, 730 (6th Cir. 2006), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199, 202 (2007). This Court has emphasized that this inquiry is focused on the *risk* of harm to health or safety, not the actual injury eventually sustained. *See Zakora*, 44 F.4th at 469.

Mr. Bass's complaint plausibly alleged the objective prong of the *Farmer* test under three independent lines of authority, namely those that prohibit prison officials from: (i) subjecting an incarcerated person to an unsafe sleeping environment, (ii) denying him the basic human need for sleep, and (iii) inflicting wanton and unnecessary pain with no penological justification. However the harm is articulated, the result is the same: Mr. Bass adequately alleged an objective violation of the Eighth Amendment.

19

###### i. Under *Brown v. Bargery*, Defendants violated Mr. Bass's Eighth Amendment rights by subjecting him to an unsafe sleeping environment

This case is controlled by *Brown v. Bargery*, 207 F.3d 863 (6th Cir. 2000). In *Brown*, the incarcerated plaintiff's bunk was installed upside down, causing bolts to protrude from the wall, and his mattress to slip off the platform. *Id.* at 865. Plaintiff-Brown was able to mitigate the risk of the mattress slipping by tying it to the bunk, but he could not mitigate his exposure to the protruding bolts. *Id.* at 869 (Siler, J., dissenting) (describing additional facts). This Court reversed the district court's dismissal, concluding that Brown adequately pleaded an Eighth Amendment violation. *Id.* at 867-68. The Court concluded that the danger posed by the mattress slipping off the bunk onto the concrete floor and the potential for the plaintiff to roll into the metal bolts protruding from the wall created an "unsafe sleeping environment"—an unreasonable risk of future injury sufficient to meet the objective prong of the *Farmer* test. *Id.* (citing *Helling*, 509 U.S. at 28).

The conditions alleged here are nearly identical to, but more dangerous than, those in *Brown*. The unsafe conditions in *Brown* resulted from the mattress sliding off the bunk and a risk that Brown could be

20

injured from *potentially* "rolling into" the bolts in the wall. *Brown*, 207 F.3d at 867. Here, Defendants left Mr. Bass with no mattress at all, leaving him with nowhere safe to sleep and constant exposure to metal screws that protruded from the sleeping platform itself. (*See* Complaint, ECF 1, PageID.3; Grievance Forms, ECF 1-1, PageID.14.) These circumstances made the screws pervasive, unavoidable hazards, no matter how Mr. Bass attempted to sleep. Mr. Bass was consequently at continuous risk of extreme sleep deprivation, back injury, lacerations, puncture wounds, potential tetanus exposure, and other harms.[6] Mr. Bass had to endure these health risks for thirty days and nights, creating an extremely serious and excessive risk to his future health. And, unlike the plaintiff in *Brown*, Mr. Bass was confined to his cell at least twenty-three hours per day with no other surface on which he could lay, rest, or sleep. *See* MDOC POLICY 04.05.120, 5–6 ¶ AA.21.

Put simply, Mr. Bass's sleeping conditions were not just potentially dangerous, as in *Brown*; his risk of injury was near certain. Indeed, Mr.

---

[6] *See Tetanus*, World Health Org. (July 12, 2024), https://www.who.int/news-room/fact-sheets/detail/tetanus.

21

Bass was actually injured as a result of Defendants' conduct. (Complaint, ECF 1, PageID.5.)

*Brown* is part of a long line of precedent establishing that prison officials may not leave incarcerated people in cells posing excessive risks to their health or safety. *See Zakora*, 44 F.4th at 470 (holding that the defendants violated the Eighth Amendment by failing to take measures to protect incarcerated plaintiff from the risk of unfettered access to drugs); *Taylor v. Larson*, 505 F. App'x 475, 477 (6th Cir. 2012) (unpublished) (concluding that a plaintiff sufficiently pleaded a violation based on exposure to a feces-covered cell for three days); *Helling*, 509 U.S. at 35 (holding that exposure to tobacco smoke from cellmate posed an unreasonable risk to plaintiff's future health). Whether the risk arises from drugs, tobacco smoke, or an unsafe bed, the Eighth Amendment protects incarcerated persons from unsafe conditions.

The district court did not address *Brown* or any of this Court's precedents establishing that exposing a prisoner to an objectively unsafe sleeping environment constitutes an Eighth Amendment violation. (Opinion, ECF 5, PageID.29-32.) Under these binding precedents, Mr.

22

Bass's *pro se* complaint alleged facts that are more than sufficient to establish a claim under the objective prong of the *Farmer* test.

### ii. Defendants further violated Mr. Bass's Eighth Amendment rights by denying him a basic necessity of life: sleep

In addition to creating an unsafe environment, Defendants also violated Mr. Bass's Eighth Amendment rights by depriving him of one of life's basic necessities: sleep. The Eighth Amendment protects incarcerated individuals from conditions of confinement that deprive them of the "'minimal civilized measure of life's necessities.'" *Farmer*, 511 U.S. at 834 (quoting *Rhodes*, 452 U.S. at 347). Five sister circuit courts have recognized that sleep is a basic human need protected under the Eighth Amendment, as undeniable as food, warmth, or exercise. This Court should follow suit and similarly conclude that by forcing sleep-depriving conditions upon Mr. Bass for thirty days, Defendants deprived him of a basic life necessity in violation of the Eighth Amendment.

1.      Every federal circuit to address the issue has held that sleep is one of life's basic necessities, protected by the Eighth Amendment. For example, in *Harper v. Showers*, 174 F.3d 716 (5th Cir. 1999), the Fifth Circuit concluded that sleep "undoubtedly counts as one of life's basic

23

needs" and held that conditions designed to prevent sleep may violate the Eighth Amendment. *Id.* at 720. The Fifth Circuit reaffirmed this holding in *Garrett v. Lumpkin*, 96 F.4th 896 (5th Cir. 2024), when it determined that a prison schedule that denied the plaintiff a minimum of six hours of sleep "could plausibly constitute a denial of the minimal civilized measure of life's necessities[.]" *Id.* at 898 (quotation marks and citation omitted). In both cases, the Fifth Circuit held that sleep deprivation was itself a plausible Eighth Amendment violation, without requiring any additional showing of injury. *Id.* at 900–01; *Harper*, 174 F.3d at 720.

The Second, Third, Seventh, and Ninth Circuits are all in accord. *See Walker v. Schult*, 717 F.3d 119, 121-22 & 126 (2d Cir. 2013) (holding that plaintiff stated Eighth Amendment claim where he got "almost no sleep" because of bed that was too narrow for him and noise from five cellmates); *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 371 & 374 (3d Cir. 2019) (holding that sleep is a basic necessity protected by the Eighth Amendment and that plaintiff stated a claim based on constant illumination, denial of warm clothing, and nothing but a bare mattress to sleep on for four days); *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996) (holding that plaintiff stated claim, even absent evidence of

24

injury, where a noisy cell block interrupted or prevented him from sleeping); *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996), *opinion amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998) (holding that conditions that cause "'grave sleeping problems'" can violate the Eighth Amendment).[7]

2.     Following this consistent caselaw from across the nation would be no great leap forward in this Court's jurisprudence; indeed, such a holding flows directly from this Court's precedents recognizing that the Eighth Amendment protects against deprivations of biological needs such as food, water, shelter, and regular access to the bathroom. *See, e.g.*, *Cunningham v. Jones*, 567 F.2d 653, 657 (6th Cir. 1977) (food); *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 512 (6th Cir. 2001) (drinking water);

---

[7] The Ninth Circuit's subsequent decision in *Chappell v. Mandeville*, 706 F.3d 1052 (9th Cir. 2013), did not change *Keenan*'s holding. *Chappell* was a summary judgment decision, where the issue was whether the conditions the plaintiff was subjected to violated a "clearly established" right, such that the defendants were not entitled to qualified immunity. *Id.* at 1059-60. The court held that the seven-day mattress restriction the plaintiff was subjected to did not violate a clearly established right, in part because it was done for a penological purpose— a contraband check. *Id.* Additionally, sleep deprivation was not at issue in *Chappell*, as the plaintiff did not allege it. *See id.* at 1058 n.2.

25

*Spencer*, 449 F.3d at 729 (protection from severe cold); *Berkshire v. Dahl*, 928 F.3d 520, 538 (6th Cir. 2019) (bathroom access).

In all of these contexts, this Court has held that prisons have an affirmative duty to provide prisoners with conditions that satisfy their basic human needs so that they can "maintain normal health." *Cunningham*, 567 F.2d at 658, 660. For example, in *Spencer*, this Court held that the prisoner-plaintiff was deprived of his basic needs when he was subjected to a wet and cold cell for ninety days. *Spencer*, 449 F.3d at 729. *Spencer* held that the prison had an affirmative duty to provide proper coats during Michigan winters, and blankets in cold cells. *Id.* at 727-28 (citing *Farmer*, 511 U.S. at 832); *see also Cunningham*, 567 F.2d at 658-60 (holding that "elementary principles" of the Eighth Amendment establish the "government's obligation" to provide a diet that "maintain[s] normal health"); *Dellis*, 257 F.3d at 512 (duty to provide hydration); *Berkshire*, 928 F.3d at 538 (duty to provide bathroom access).

The same is true for sleep. Just like coats in winter or food when hungry, prisons have a duty to provide conditions that allow for sleep.

3.    Medical science shows just how necessary sleep is for the basic functioning of the human body. Like eating or drinking, a human being

26

needs a certain amount of sleep each day to survive.[8] The symptoms of declining strength and mental alertness that resulted from unconstitutional food deprivation in *Cunningham* result from sleep deprivation as well: mental decline develops after only a few days without proper sleep.[9] Physical decline soon follows.[10] A chronic loss of sleep increases the risk of several diseases, including obesity, diabetes, cardiovascular disease, neurological issues, and infection.[11] Loss of sleep

---

[8] *See Brain Basics: Understanding Sleep*, US DHHS, NIH, Nat'l Inst. of Neurological Disorders & Stroke, https://www.ninds.nih.gov/health-information/public-education/brain-basics/brain-basics-understanding-sleep (Accessed May 5, 2025).

[9] Marcus Harrington et al., *The effect of sleep deprivation on emotional memory consolidation in participants reporting depressive symptoms*, 152 NEUROBIOLOGY OF LEARNING & MEMORY 10 (2018).

[10] Siaw Cheok Liew & Thidar Aung, *Sleep Deprivation and Its Association with Diseases - A Review*, 77 SLEEP MED. 192 (2021); Yin, J. et al., *Relationship of sleep duration with all-cause mortality and cardiovascular events*, 117 J. AM. HEART ASS'N 1, 5 (2017); Itani, O., et al., *Short sleep duration and health outcomes: A systematic review, meta-analysis, and meta-regression*, 32 SLEEP MED. 246 (2017); Francesco P Cappuccio, et al., *Sleep Duration and All-Cause Mortality: A Systematic Review and Meta-Analysis of Prospective Studie*s, 33 SLEEP 585 (2010).

[11] US DHHS, NIH, Nat'l Heart, Lung & Blood Inst., Your Guide to Healthy Sleep 1 (2011) (NIH Publ'n No. 11-5271); *see also Why Sleep Matters: Consequences of Sleep Deficiency*, Harv. Med. Sch. Div. of Sleep Med. (Oct. 1, 2021), https://sleep.hms.harvard.edu/education-training/public-education/sleep-and-health-education-program/sleep-

27

also impacts "all major psychological conditions, including depression, anxiety, and suicidality."[12] As sleep scientist Matthew Walker puts it, "[E]very major system, tissue, and organ in your body suffers when sleep becomes short. . . . [T]he shorter your sleep, the shorter your life."[13]

4.    As a *pro se* litigant, Mr. Bass pleaded facts sufficient to plausibly allege that he was denied conditions that would provide for his basic need for sleep. Indeed, his allegations describe conditions that are far worse than those found by sister circuit courts to deny the basic necessity of sleep. Rather than a bare mattress like in *Mammana*, 934 F.3d at 371, or a too-thin bed like in *Schult*, 717 F.3d at 121, Mr. Bass had nothing to lay on but a concrete slab with protruding screws any time he attempted to sleep. (Complaint, ECF 1, PageID.3.) Whereas the plaintiff in *Mammana* was subjected to sleep-depriving conditions for four days, 934 F.3d at 371, Mr. Bass was subjected to these conditions for

---

health-education-45; *Here's What Happens When You Don't Get Enough Sleep*, Cleveland Clinic (May 29, 2024), https://health.clevelandclinic.org/happens-body-dont-get-enough-sleep.

[12] Matthew Walker, *Why We Sleep: Unlocking the Power of Sleep and Dreams* 164 (2017).

[13] *Id.*

28

thirty. Construed liberally, the facts alleged in the complaint are more than sufficient to show that he was subjected to sleep-depriving conditions.

This Court should allow Mr. Bass's complaint to proceed past the PLRA's screening stage. To affirm the dismissal at this stage would require this Court to find that sleep is not a basic human need, putting the Court in conflict with five other circuit courts and its own jurisprudence about "dignity, civilized standards, humanity, and decency." *Cunningham*, 567 F.2d at 658 (citation omitted).

### iii. Defendants also subjected Mr. Bass to unnecessary and wanton pain for no penological purpose

"The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (cleaned up). The infliction of pain is unnecessary and wanton if it is "totally without penological justification," *id.* (citation omitted), or if it violates contemporary standards of decency, *Rhodes*, 452 U.S. at 347. Here, Defendants violated Mr. Bass's rights by inflicting unnecessary pain upon him, without penological justification, and in a manner that defies contemporary standards of decency.

This Court's decision in *Knop v. Johnson*, 977 F.2d 996 (6th Cir. 1992), demonstrates the plausibility of Mr. Bass's claim. In *Knop*, a Michigan prison required inmates to go outside in the winter without proper winter hats, gloves, or boots. *Id* at 1011-12. In affirming a district court ruling for the plaintiffs, this Court held that exposing inmates to obviously painful conditions without a legitimate government interest is an unnecessary and wanton infliction of pain prohibited by the Eighth Amendment. *Id* at 1012-13.

Mr. Bass was similarly subjected to painful conditions with no penological purpose. Indeed, his concrete bed of screws was more akin to a medieval torture device than a place to sleep. *See* Boucicaut Master, *The Death of the Roman Consul Marcus Atilius Regulus* (1413–1415), Getty, L.A.[14] Proscribing such medieval punishments was a foundational purpose of the Eighth Amendment. As the Supreme Court put it: "The primary concern of the drafters was to proscribe tortures and other barbarous methods of punishment." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (cleaned up).

---

[14] Available at https://www.getty.edu/art/collection/object/107TYB (last visited May 5, 2025).

This showing alone is enough to constitute an unnecessary and wanton infliction of pain, but the total absence of penological justification underscores its unconstitutionality. *Hope*, 536 U.S. at 730. The sole basis for Mr. Bass's mattress removal—the misconduct ticket—was dismissed less than a week after it had been issued. (Complaint, ECF 1, PageID.3, 5.) And, regardless, it violated the prison's own policies to deprive a person of a mattress as punishment for a misconduct charge. MDOC POLICY 04.05.120, 7 ¶¶ HH, JJ. No other justification was ever provided, and yet Defendant Bonn continued to re-authorize Mr. Bass's mattress deprivation every seven days, for another twenty-four days after the misconduct charge was dismissed. *Id.*; (*see also* Grievance Forms, ECF 1-1, PageID.14). Mr. Bass was thus forced to sleep on a concrete bed of screws for 30 days for no penological purpose.

Finally, the conditions Defendants subjected Mr. Bass to violate contemporary standards of decency, which are evaluated based on objective indicia of societal standards. *Rhodes*, 452 U.S. at 347 (citation omitted). Here, objective indicia from the American Correctional Association, bar organizations, and the United Nations reflect a

31

consensus that denying a prisoner a mattress defies contemporary standards of decency.

The United Nations requires that "[e]very prisoner shall, in accordance with local or national standards, be provided with a separate bed and with separate and sufficient bedding." United Nations Office on Drugs and Crime, United Nations Standard Minimum Rules for the Treatment of Prisoners (the Nelson Mandela Rules), G.A. Res. 70/175, at 7 (adopted Dec. 17, 2015).[15] The American Correctional Association similarly states that incarcerated people should be "issued suitable, clean bedding and linen, including two sheets, a pillow and pillowcase, one mattress." Am. Corr. Ass'n, 2016 Standards Supplement, 4-ACRS-4B-04.[16] The American Bar Association agrees that prisons must provide every incarcerated person a mattress off the floor. Am. Bar Ass'n,

---

[15] Available at https://www.unodc.org/documents/justice-and-prison-reform/Nelson_Mandela_Rules-E-ebook.pdf.

[16] Available at https://www.aca.org/common/Uploaded%20files/2016%20Standards%20Supplement.pdf.

Standards for Crim. Just., Treatment of Prisoners, Section 23-3.3(b) (2010).[17]

By depriving Mr. Bass of a mattress, and forcing him to attempt to sleep on a concrete slab of metal screws, Defendants inflicted unnecessary and wanton pain in defiance of contemporary standards of decency.

### B. Mr. Bass's pleadings satisfy the subjective prong of an Eighth Amendment violation

Mr. Bass's complaint also alleged sufficient facts to make out the subjective prong of an Eighth Amendment claim. When Defendants took repeated, affirmative steps to deprive Mr. Bass of a safe sleeping environment, they knowingly subjected him to an obvious risk of harm.

The subjective prong of the Eighth Amendment test is satisfied when an official shows deliberate indifference to either a health or safety risk. *Farmer*, 511 U.S. at 835; *Zakora*, 44 F.4th at 472. An official is deliberately indifferent when he is aware of and disregards a risk, which can be demonstrated through "inference from circumstantial evidence."

---

[17] Available at https://www.americanbar.org/content/dam/aba/publications/criminal_justice_standards/treatment_of_prisoners.pdf.

33

*Zakora*, 44 F.4th at 472. In *Farmer*, the Supreme Court held that a factfinder could infer that a prison official knew of a risk of harm from the very fact that it was obvious. *Farmer*, 511 U.S. at 842.

Once again, *Brown* is directly on point. Applying the obvious-risk rule from *Farmer*, this Court held that plaintiff-Brown adequately pleaded the subjective prong of the Eighth Amendment because he notified prison officials about the conditions of his cell, which plausibly showed that the defendant-warden knew about those conditions and was deliberately indifferent to the obvious risks they posed. *Brown*, 207 F.3d at 867-68. So too, here. Mr. Bass's complaint plausibly alleged that Defendants knew about his sleeping conditions and that the risks those conditions posed were obvious.

*First*, Mr. Bass plausibly alleged that Defendants were aware of his sleeping conditions. Defendant Bonn "signed off" on the initial mattress restriction. (Opinion, ECF 5, PageID.27; Complaint, ECF 1, PageID.3, 5; Grievance Forms, ECF 1-1, PageID.11.) After signing off on the restriction, Defendant Bonn had to review it every seven days, meaning that he affirmatively re-imposed the condition multiple times over the thirty-day period. MDOC POLICY 04.05.120, 7–8 ¶¶ HH, JJ. Defendant

34

Bonn was thus aware of Mr. Bass's sleeping conditions and continued to re-impose them after the misconduct allegation was dismissed. (Complaint, ECF 1, PageID.3.) Further, Mr. Bass repeatedly notified prison officials in writing that he remained without a mattress and sought to have it returned. (Grievance Forms, ECF 1-1, PageID.11, 14.)

Defendant Keebaugh was also aware of Mr. Bass's sleeping conditions. He caused them in the first place by recommending that Mr. Bass be placed on the mattress restriction. (Complaint, ECF 1, PageID.3.) And he was then directly faced with the conditions of Mr. Bass's cell on a regular basis during his rounds through the segregation unit. Prison policy requires housing staff to visually inspect cells in the segregation unit every thirty minutes. MDOC POLICY 04.05.120, 10 ¶ VV. As a correctional officer, Defendant Keebaugh performed these inspections while on shift.[18]

This level of awareness of the conditions is far greater than that found to be sufficient in *Brown*, where this Court held the mere fact that

---

[18] Discovery would allow Mr. Bass to determine exactly how many times Defendant Keebaugh inspected his cell. According to prison policy, staff must sign their initials at each inspection. MDOC POLICY 04.05.120, 10 ¶VV.

the plaintiff repeatedly notified unspecified prison officials about his sleeping conditions was sufficient to plausibly allege the warden's knowledge of them at the screening stage. *Brown*, 207 F.3d at 867-68. Here, Mr. Bass showed far more: that the specific officials he named in the complaint created the unconstitutional conditions by requesting (Keebaugh) and authorizing (Bonn) the removal of the mattress. Mr. Bass's claim then goes even further, relying on facts—such as his grievances and the prison's visual inspection protocol—showing that Defendants continued to be confronted with, and approve of, his dangerous sleeping conditions for the duration of the thirty-day deprivation.

*Second*, as in *Brown*, the obvious nature of the risk posed by Mr. Bass's sleeping conditions demonstrates Defendants' deliberate indifference. *Brown*, 207 F.3d at 867-68. Depriving a person of a mattress and leaving him nowhere to sleep but a slab full of screws puts him at obvious risk of harm, whether that harm is construed as unlawfully subjecting someone to an unsafe environment, per *Brown*, or depriving them of the basic human need for sleep.

36

Indeed, where this Court has concluded that an incarcerated plaintiff has been denied a basic human need, it has found the risk of harm so obvious that the subjective prong of the Eighth Amendment test is satisfied as a matter of course. For example, in *Spencer*, after concluding that a cold and wet cell deprived the plaintiff of the basic human need for shelter, the court concluded that the "substantial risk is so obvious as to merit no further discussion." *Spencer*, 449 F.3d at 729. And, in *Berkshire*, this Court held that "the Eighth Amendment violation is obvious" where a prisoner is denied bathroom access. *Berkshire*, 928 F.3d at 537 (quoting *Hope*, 536 U.S. at 738). Finally, in *Dellis*, which found a deprivation of the basic need for drinking water, the Court did not find it necessary to engage in a subjective prong analysis before concluding that the deprivations violated the Eighth Amendment. *See Dellis*, 257 F.3d at 512.

Mr. Bass plausibly alleged that Defendants acted with deliberate indifference by subjecting him to dangerous, sleep-depriving conditions for thirty days. This harm was not only obvious but repeatedly brought to Defendants' attention.

37

### C. The district court misapprehended the facts and ignored binding precedent

The district court rejected Mr. Bass's Eighth Amendment claim based in large part on its erroneous conclusion that Mr. Bass did "not allege that he suffered any particular discomfort or pain as a result of the mattress restriction." (Opinion, ECF 5, PageID.32.) This reasoning missed the mark: Mr. Bass's complaint stated that Defendants' actions caused him "significant hardship, mental, physical, and psychological injury." (Complaint, ECF 1, PageID.5.) Additionally, throughout the complaint, Mr. Bass alleged facts substantiating his assertion that he suffered significantly from Defendants' conduct. (*See, e.g.*, Complaint, ECF 1, PageID.3 ("This is cruel and unusual punishment[,] being forced to sleep on a concrete slab with metal screws for a 30 day period.").) Ultimately, because the district court apparently overlooked the fact that Mr. Bass alleged that he suffered injuries, it seems to have fundamentally misunderstood the gravity of his claim.

The district court's emphasis on the extent of Mr. Bass's actual injuries was also legally erroneous: binding precedent states that an Eighth Amendment violation occurs when a prisoner is subjected to conditions posing an unreasonable risk of injury, even if no actual injury

38

occurred. *Zakora*, 44 F.4th at 469. In reaching its flawed conclusion, the district court relied on several unpublished, mostly district court, decisions that fail to grapple with this Court's and the Supreme Court's precedents. (Opinion, ECF No. 5, PageID.31-32.) Two of those unpublished decisions were by panels of this Court, and they are both factually distinguishable and legally unpersuasive. First, in *Richmond v. Settles*, the plaintiff was without a mattress for a mere thirty hours. *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (unpublished). Second, *Jones v. Toombs* is a three-paragraph table decision in which a panel of this Court denied an Eighth Amendment claim based on a two-week mattress restriction. *Jones v. Toombs*, 77 F.3d 482, 482 (6th Cir. 1996) (unpublished). Neither of these decisions—which were both litigated *pro se,* including on appeal—considered *Brown* or analyzed whether the plaintiff was deprived of a basic human need.[19]

---

[19] The district court also cited five unreported district court decisions. All five were litigated by *pro se* plaintiffs, and none of them acknowledged *Brown*'s precedential decision about unsafe sleeping conditions. They are also factually distinguishable from this case. Two of the decisions involved plaintiffs whose mattresses were confiscated for safety reasons because the plaintiffs were deemed suicide risks. *Lee v. Wagner*, No. 1:17-CV-474, 2017 WL 2608752, at *2 (W.D. Mich. June 16, 2017); *Sanders v. Smith*, No. 1:11-CV-892, 2011 WL 5921426, at *6 (W.D.

39

The district court's cursory analysis of Mr. Bass's Eighth Amendment claim thus ignored this Court's precedent and instead cherry-picked a cluster of unreported cases that were all litigated *pro se*. This Court should reverse. Indeed, the existence of a cluster of under-reasoned, unreported decisions dismissing *pro se* litigants' complaints about prison sleeping conditions calls out for this Court's intervention.

**II.  At minimum, the district court abused its discretion in dismissing Mr. Bass's Eighth Amendment claim with prejudice, and without first giving him an opportunity to amend**

If this Court does not reverse outright, it should at least vacate the district court's with-prejudice dismissal and remand so that Mr. Bass can file an amended complaint. If given such an opportunity, Mr. Bass could further specify the dangerous conditions he was subjected to and the

---

Mich. Nov. 27, 2011). In another case, the plaintiff's mattress was returned to him once his misconduct ticket was dismissed. *Cook v. Leitheim*, No. 1:22-CV-630, 2022 WL 3040342, at *2 (W.D. Mich. Aug. 2, 2022). In yet another case, the mattress deprivation resulted from a sustained "major misconduct ticket." *Jones v. Carberry*, No. 2:08-CV-268, 2010 WL 1172562, at *3 (W.D. Mich. Mar. 24, 2010). In the final case, the plaintiff only suffered minor aches due to the mattress restriction. *Brandon v. Bergh*, No. 2:09- CV-179, 2009 WL 4646954 (W.D. Mich. Dec. 8, 2009).

injuries he suffered as a result, leaving no doubt he can make out a cognizable Eighth Amendment claim.

### A. The district court failed to apply the liberal standard for granting leave to amend a *pro se* complaint

Rule 15 provides that courts should "freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). This rule is based on "the principle that cases should be tried on their merits rather than on the technicalities of pleadings." *Janikowski v. Bendix Corp.*, 823 F.2d 945, 951 (6th Cir. 1987) (citation omitted). Consequently, "[a]lthough this court reviews denials of leave to amend only for abuse of discretion, it should be emphasized that the case law in this Circuit manifests liberality in allowing amendments to a complaint." *Newberry v. Silverman,* 789 F.3d 636, 645 (6th Cir. 2015) (citation omitted).

For that reason, this Court has repeatedly admonished that "dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." *Id.* at 646 (citation and alteration omitted); *see also Stewart v. IHT Ins. Agency Grp., LLC*, 990 F.3d 455, 457 n* (6th Cir. 2021) (quoting the same). Stated otherwise, "if it is at all possible that

41

the party can state a claim for relief, the court should dismiss with leave to amend." *Lucas v. Chalk*, 785 F. App'x 288, 292 (6th Cir. 2019) (unpublished) (quoting *Brown v. Matauszak*, 415 F. App'x 608, 614 (6th Cir. 2011) (unpublished)).

The district court did not provide any reason for its decision to dismiss Mr. Bass's complaint with prejudice, without providing Mr. Bass a single opportunity to amend his complaint. (Opinion, ECF 5, PageID.33; Judgment, ECF 6, PageID.34.) This lack of explanation was itself a reversible abuse of discretion. *See Parchman v. SLM Corp.*, 896 F.3d 728, 736 (6th Cir. 2018) (denying leave to amend without justification is "not an exercise of discretion, but abuse of that discretion.") (quotation marks and citation omitted)). On this basis alone, this Court should vacate the district court's decision.

The analysis applies equally to a *sua sponte* dismissal under the PLRA's screening procedures, where a district court acts on a *pro se* complaint before the plaintiff has an opportunity to explicitly seek leave to amend. *See LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) (holding that Rule 15's liberal amendment standard applies to complaints dismissed at PLRA screening stage). To be sure, this Court

42

will not usually fault a district court for dismissing a complaint with prejudice where a represented plaintiff did not explicitly ask for leave to amend it. *Rashada v. Flegel*, No. 23-1674, 2024 WL 1367436, at *4 (6th Cir. Apr. 1, 2024) (unpublished). But dismissing a *pro se* plaintiff's complaint under the screening procedures of the PLRA presents special circumstances. For starters, "consistent with the liberal treatment afforded to *pro se* plaintiffs, we have previously recognized that district courts should afford *pro se* plaintiffs special consideration when granting leave to amend complaints." *Id.*; *see also Tolliver v. Noble*, 752 F. App'x 254, 261 (6th Cir. 2018) (unpublished) (citing *Neitzke v. Williams*, 490 U.S. 319, 330 (1989)). Additionally, where a court acts *sua sponte* to dismiss a complaint under the PLRA's screening procedures, the plaintiff does not have the typical opportunity to request leave to amend, which usually occurs after a plaintiff receives a defendant's motion to dismiss a complaint. *See Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000) (describing procedure for requesting leave to amend).

Consequently, this Court has repeatedly vacated district courts' decisions dismissing *pro se* plaintiffs' complaints with prejudice, even though those plaintiffs did not ask the district courts for leave to amend

43

their complaints. *E.g.*, *Berndt v. State of Tenn.*, 796 F.2d 879, 882–83 (6th Cir. 1986); *Rashada*, 2024 WL 1367436, at \*4; *Lucas* 785 F. App'x at 291.

In sum, the district court abused its discretion by dismissing the complaint with prejudice, without providing any reason to deny Mr. Bass leave to amend it. *See Parchman*, 896 F.3d at 736.

**B.    If granted leave to amend his complaint, Mr. Bass could supplement his complaint with facts leaving no doubt that he has a plausible Eighth Amendment claim**

If given the opportunity to amend his complaint, Mr. Bass could remedy the district court's doubts about his Eighth Amendment claim by offering further details about the dangerous, sleep-depriving conditions he was forced to endure and the severe injuries he suffered as a result.

In a narrow exception to the typical limitations of the appellate record, panels of this Court routinely consider factual representations of counsel on appeal when deciding whether a plaintiff who proceeded *pro se* below should be granted leave to amend his complaint. *See, e.g.*, *Lucas*, 785 F. App'x at 291; *Matauszak*, 415 F. App'x at 609. In these circumstances, counsel can clarify that any deficiencies in the *pro se* plaintiff's complaint resulted from a lack of legal training, not from a lack of merit. Consistent with this practice, counsel will here represent

44

additional facts for the limited purpose of demonstrating that, if granted leave to amend his complaint, Mr. Bass could cure any deficiencies in his original *pro se* complaint.

Although Mr. Bass's complaint explained that prison officials forced him to sleep on a concrete slab with metal screws, upon amendment, Mr. Bass could explain just how macabre the conditions were. For example, Mr. Bass could specify that the metal screws protruded about 4 to 6 inches upward from the concrete slab. And the screws were centered at three different locations along the slab: they pressed into Mr. Bass's legs and back and were near his face. There was thus no way for Mr. Bass to lay on the concrete slab without the screws pressing into his body. The only other place Mr. Bass could conceivably lay down was on the cell floor; however, the ground was infested with insects and wet feculent matter leaking from the cell's toilet and adjacent cells. Because Mr. Bass had no access to cleaning supplies, he had nowhere but the bed of screws on which he could lay down, rest, or try to sleep for a month.

If given the opportunity to amend, Mr. Bass could also provide further details about the severe injuries he suffered as a result of Defendants' conduct. *First,* during the month that Mr. Bass had no

mattress to lay on, he was barely able to sleep. When he occasionally drifted into sleep, Mr. Bass experienced constant nightmares. Mr. Bass was also overcome with paranoia because he constantly feared knocking his teeth out from rolling onto the metal screws. Although Mr. Bass sought help from a therapist, he continues to suffer from nightmares and paranoia to this day.

*Second*, as a result of being forced to lay on 4- to 6-inch protruding metal screws, Mr. Bass suffered back injuries, including nerve damage, that continues to impede his ability to walk without pain. This condition is so severe that Mr. Bass is now receiving medical care to treat it, including an MRI to diagnose his condition, more than a year after the incident. He did not have any back problems before he was deprived of his mattress.

*Third,* during the month he had no mattress, Mr. Bass was continuously battling with the screws to prevent them from puncturing his face. But as he tried to block his face, the metal screws would instead press into his forearms, causing them to swell overnight.

*Finally*, Mr. Bass was confined to his cell under these conditions for nearly twenty-four hours per day. Some days, he was in his cell all day

46

without any recreation or shower time, and without any safe surface upon which he could lay down.

Mr. Bass's complaint alleged sufficient facts to proceed past the screening stage on his Eighth Amendment claim. But if this Court does not reverse outright, it should at least vacate the district court's with-prejudice dismissal, and remand with instructions to provide Mr. Bass an opportunity to file an amended complaint.

## III. The district court further abused its discretion by dismissing Mr. Bass's First Amendment claim with prejudice and without leave to amend

The district court further abused its discretion when it dismissed Mr. Bass's First Amendment retaliation claim with prejudice. If given leave to amend the complaint, Mr. Bass could clarify his retaliation claim and allege additional facts demonstrating its merit.

To bring a First Amendment retaliation claim, a plaintiff must allege facts showing that: (1) he engaged in First Amendment protected activity, (2) the defendants took adverse action against him that would "deter a person of ordinary firmness from continuing to engage in that conduct," and (3) there is a causal connection between the plaintiff's protected activity and the adverse action taken against him. *Bell v.*

47

*Johnson*, 308 F.3d 594, 602 (6th Cir. 2002). If granted leave to amend his complaint, Mr. Bass could clarify his retaliation claim and allege additional facts satisfying each element of the claim.

*First*, contrary to the district court's characterization, Mr. Bass's complaint sufficiently alleged that he engaged in protected activity. (*Contra* Opinion, ECF No. 5, PageID.29.) Filing a prison grievance, whether oral or written, is a protected activity that satisfies this first element. *See Hill v. Lappin*, 630 F.3d 468, 472 (6th. Cir. 2010); *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018). From February 9, 2024 to April 1, 2024, Mr. Bass continuously made written and oral grievances asking for the return of his mattress.[20] (Complaint, ECF 1, PageID.4; Grievance Forms, ECF 1-1, PageID.11-14.)

*Second,* Mr. Bass can plead sufficient facts alleging that Defendants took adverse action against him. An adverse action is one that would "deter a person of ordinary firmness from engaging in

---

[20] While filing a frivolous grievance is not a First Amendment protected activity, *Maben*, 887 F.3d at 264, Mr. Bass's grievances were not frivolous. A grievance is not frivolous when the plaintiff pursues "a grievance about prison conditions and [seeks] redress of that grievance." *Id.* Since Mr. Bass's grievances were aimed at ending the mattress restriction—i.e., "prison conditions"— his grievances were non-frivolous.

48

protected conduct." *Bell*, 308 F.3d at 606. The adverse action need only be more than "de minimis," meaning not truly "inconsequential." *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999). "[T]he deterrent effect of the adverse action need not be great in order to be actionable." *Hill*, 630 F.3d at 473. And a plaintiff does not need to show that he was actually deterred by the defendants' conduct—only that an ordinary person would be deterred. *See Bell*, 308 F.3d at 606.

Defendants took adverse action against Mr. Bass in two ways. For starters, as Mr. Bass alleged in the complaint, Defendants continued to withhold his mattress after the misconduct allegation against him was dismissed. Prison policy required that Defendant Bonn affirmatively re-approve the mattress restriction every seven days. MDOC POLICY 04.05.120, 7–8 ¶¶ HH, JJ. Continuing to deprive Mr. Bass of a mattress for three weeks after the misconduct charge was dismissed is not inconsequential, as evidenced by the "mental, physical, and psychological injury" Mr. Bass suffered. (Complaint, ECF 1, PageID.5.)

Additionally, if given the opportunity to amend his complaint, Mr. Bass could allege facts showing that Defendants further retaliated against him by denying him medical care for eight months. Specifically,

49

Mr. Bass could allege that he filed four medical care requests between February and June of 2024, in which he asked for treatment for the injuries he sustained from the month he was forced to sleep on the concrete bed of screws. Despite MDOC policy requiring that requests be triaged within one business day of initial receipt, medical staff never responded to, examined, or treated Mr. Bass. MDOC POLICY 03.04.100, 8–9 ¶ UU. Over that four-month period, his written requests grew increasingly desperate as his symptoms grew more painful and debilitating. He also verbally implored the nursing staff for care. Despite these efforts, Mr. Bass was never seen or treated by medical staff at the Ionia Correctional Facility.

He only began to receive care in October 2024, after he was moved to a different MDOC facility that was outside Defendants' control. At that new facility, he underwent a diagnostic MRI and is receiving treatment for nerve damage, debilitating pain, difficulty walking, and recurring nightmares, all resulting from the month he spent sleeping on a concrete bed of screws. As panels of this Court have recognized, the denial of medical care is plainly an adverse action that would deter an ordinary person from engaging in protected conduct. *See Wash v. Gilless*, 215 F.3d

50

1328 at *4 (6th Cir. 2000) (unpublished) (denial of medical care is an adverse action); *O'Brien v. Michigan Dep't of Corr.*, 592 F. App'x 338, 343 (6th Cir. 2014) (unpublished) (same); *Bushway v. Bureau of Prisons*, 198 F.3d 244, *2–3 (6th Cir. 1999) (unpublished) (same).

*Third*, to prove causation, a plaintiff must show that the adverse action taken against him was "motivated at least in part by [his] protected conduct." *Hill*, 630 F.3d at 475. Circumstantial evidence of causation, including temporal proximity between the protected conduct and adverse action, is sufficient for the claim to survive the screening procedures of the PLRA. *See King*, 680 F.3d at 695.

If given leave to amend, Mr. Bass could supplement his complaint with sufficient facts to plausibly show causation. These facts include, but are not limited to, conversations between Mr. Bass and Defendant Keebaugh in which Mr. Bass asked for his mattress back; a statement by Defendant Keebaugh commenting on the grievances Mr. Bass filed; the close temporal proximity between Mr. Bass's oral and written grievances and the retaliatory actions by Defendants; Defendants' retaliatory denial of medical care to Mr. Bass for eight months; and the extensive medical care Mr. Bass began to receive once he was transferred to an MDOC

51

facility that was outside Defendants' control, which further demonstrates that the denial of care at Ionia was unjustified and thus retaliatory. In sum, Mr. Bass could supplement his complaint to show that Defendants continued to deprive him of a mattress after the misconduct ticket was dismissed, and denied him medical care, "at least in part" to retaliate against him for filing grievances. *See Hill*, 630 F.3d at 475.

* * *

Instead of permitting Mr. Bass the opportunity to amend and clarify his First Amendment claim, the district court dismissed it out of hand based on a misreading of the claim. The district court incorrectly stated that the adverse action Mr. Bass was basing his claim on was the initial thirty-day mattress deprivation. (Opinion, ECF 5, PageID.29.) Because Mr. Bass filed his grievances after that initial deprivation, the court concluded that Mr. Bass did not allege any protected conduct that could have caused the initial adverse action. (*Id.*) However, Mr. Bass's complaint made clear that the actual adverse action he was alleging was the *continuation* of the deprivation after the misconduct charge was dismissed: "This is retaliation because I should've received my mattress back once the misconduct was dismissed. Instead the warden Mr. Bonn

52

continued my mattress restriction[.]" (Complaint, ECF 1, PageID.3.) Analyzed correctly, the adverse action—continuing the mattress deprivation after its supposed justification was dismissed—came after Mr. Bass engaged in the protected activity of filing grievances. The adverse action was therefore plausibly caused by the protected activity. Had the district court properly granted Mr. Bass leave to amend this claim, he could have further clarified the nature of his claim and supported it with additional factual allegations.

In light of the well-established principle that "cases should be tried on their merits rather than on the technicalities of pleadings," this Court should grant Mr. Bass leave to amend his First Amendment claim. *Janikowski*, 823 F.2d at 951.

53

## CONCLUSION

Mr. Bass respectfully requests that this Court reverse the dismissal of his Eighth Amendment claim, and vacate and remand the dismissal of all remaining claims with instructions to grant Mr. Bass leave to amend the complaint.

Dated: May 5, 2025                          Respectfully submitted,


                                            /s/ *Joshua D. Weiss*
                                            Joshua D. Weiss
                                            UCLA SCHOOL OF LAW
                                            PRISONERS' RIGHTS CLINIC
                                            385 Charles E. Young Drive E
                                            Los Angeles, CA 90095
                                            (310) 206-7466
                                            weiss@law.ucla.edu

                                            Devi M. Rao
                                            Wynne Muscatine Graham
                                            RODERICK & SOLANGE
                                               MACARTHUR JUSTICE CENTER
                                            501 H Street NE, Suite 275
                                            Washington, DC 20002
                                            (202) 869-3434
                                            devi.rao@macarthurjustice.org
                                            wynnemg@macarthurjustice.org

                                            *Counsel for Plaintiff-Appellant\**

\*This brief was prepared with the assistance of UCLA School of Law Prisoners' Rights Clinic students Mike Apsan-Orgera, Binwant Kaur Kahlon, Mark Pampanin, and Shannon Saul.

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)**

1.    This Brief complies with type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure and Circuit Rule 32(b) because, according to the word count function of Microsoft Word 2019, the Brief contains 10,479 words excluding the parts of the brief exempted by Rule 32(f) of the Federal Rules of Appellate Procedure.

2.    This Brief complies with the typeface and type style requirements of Rule 32(a)(5) and (6) of the Federal Rules of Appellate Procedure and Circuit Rule 32(b) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Century Schoolbook font for the main text and 14-point Century Schoolbook font for footnotes.

Dated: May 5, 2025                              */s/ Joshua D. Weiss*
                                               Joshua D. Weiss

## CERTIFICATE OF SERVICE

I, Joshua D. Weiss, hereby certify that on May 5, 2025, I electronically filed the foregoing document through the court's electronic filing system, and that it has been served on all counsel of record through the court's electronic filing system.

/s/ *Joshua D. Weiss*
Joshua D. Weiss

**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS**

**United States District Court for the Western District of Michigan, Case No. 1:24-cv-00744**

| Docket No. | Description | Page ID |
|---|---|---|
| 1 | Complaint | 1-7 |
| 1-1 | Attachments to Complaint (Misconduct Hearing Report and Grievance Forms) | 8-15 |
| 5 | Opinion | 24-33 |
| 6 | Judgment | 34 |
| 7 | Notice of Appeal | 35-38 |